POPE *et al.*, commissioners, *v.* MATTHEWS.

1. Where, on August 18, 1905, an act of the legislature was approved which provided that from and after its passage a new county, to be called the County of Toombs, "shall be and is laid out" from certain existing counties, including a portion of the County of Montgomery, and that the

voters "of said new county" should elect county officers on the first Wednesday in October thereafter; and where at the same session of the legislature several similar acts for the laying out and organization of other new counties were passed, and on August 21 a general act was approved which provided for the organization of new counties in this State, in one section of which it was declared that "all taxes due the State and county by persons residing in the new county, or upon property included within the limits of the new county at the time of the creation of the new county, shall be payable to the tax-collector of the county from which said territory was taken;" and where, on October 2, the county commissioners of Montgomery county, by virtue of the power contained in section 395 of the Political Code, levied an extra tax of five dollars on each $1,000 of valuation of property, for the purpose of building a new court-house in Montgomery county (no contract appearing to have been previously made), in addition to the general tax levy made upon recommendation of the grand jury under section 399 of the Political Code: *Held*, that the extra or unusual tax thus assessed at the will of the commissioners after the passage of the act laying out the County of Toombs, and two days before the election of its county officers at the time fixed in such act, could not be collected from persons whose residences and property were included in the portion of Montgomery county cut off and forming part of the new county.

2. Under the facts of this case, the levy of the tax for building a new court-house rested upon the Political Code, § 395.

3. The Political Code, § 575, declares that, in counties where the alternative road law has been adopted, "the commissioners of roads and revenues, or ordinary, as the case may be, shall levy a tax, additional to any now authorized by law, of not more than two tenths of one per cent. on all the taxable property of the county." Such a tax is therefore prescribed by law to be levied annually, its amount being limited; and it stands more nearly like an ordinary annual tax for county purposes than an extra or special tax such as that referred to in the preceding note, which the law does not require to be levied annually, but which may or may not be levied in a particular year according to contingencies.

4. The county tax digests are not required to be completed before August 1. The act approved August 21 was introduced in the House of Representatives on June 29, was passed by that branch of the legislature on August 8, and by the Senate on August 14. *Held*, that the words "taxes due," employed in such act, did not exclude the collection of regular annual county taxes, although the ordinary or county commissioners had not actually levied them before the act was approved.

Submitted March 3,—Decided May 11, 1906.

Injunction. Before Judge Martin. Montgomery superior court. January 24, 1906.

*J. B. Geiger,* for plaintiffs in error. *J. H. Hall,* contra.

LUMPKIN, J. At the spring term, 1905, of the superior court of Montgomery county, the grand jury recommended that the county

commissioners levy for county purposes a tax of $1.95 on each thou-
sand dollars of valuation of property, and that they levy an ad
valorem road tax of twenty-five cents on the one thousand dollars
(the alternative road law being in force in that county).   On
August 18, 1905, an act was approved the caption of which was, "An
act to lay out and organize a new county from the Counties of Tatt-
nall, Montgomery, and Emanuel, to attach the same to a judicial
circuit and congressional district, and for other purposes therein
specified."   (Acts 1895, p. 62.)   It declared that "from and after
the passage of this act a new county shall be and is laid out from
the Counties of Tattnall, Montgomery, and Emanuel, as follows:"
(boundaries described and certain other provisions made.)   It was
provided that the voters "of said new county" shall assemble at the
county site (which was named) on the first Wednesday in October,
1905, to elect county officers.   Seven other new counties were created
by the same legislature, under a constitutional amendment which
had previously been adopted.   On August 21, three days after the
act above referred to had been approved, a general act was passed,
the caption of which was: "An act to provide for the organization
of new counties in this State, to provide the manner in which elec-
tions for officers shall be held, prescribe qualifications for voters, fix
the places for holding elections for officers in said new counties,
and for the consolidation of the votes, the transfer of business from
counties out of which said new counties were created to the new
counties, to provide jurors for the courts sitting in the new counties,
and for other purposes." . (Acts 1895, p. 46.)   On October 2, the
county commissioners of Montgomery county levied a tax for county
purposes, aggregating $1.95 on the thousand dollars, which was
divided under different heads: to pay sheriffs, jailers, or other
officers; to pay the per diem of jurors; to pay for supporting paupers
of the county; and to pay expenses of bailiffs and non-resident
witnesses.   In addition to this they also levied a tax of $5 on each
thousand dollars of taxable property "to build or repair court-
houses or jails, bridges or ferries, or other public improvements;"
and also a tax of twenty-five cents on the one thousand dollars for
working the public roads.   On October 4, in accordance with the
act of the legislature laying out the County of Toombs, county
officers were elected.   At the November term of the superior court
of Montgomery county the grand jury recommended that the county

commissioners erect a new court-house at a cost not to exceed $45,-000, that the amount necessary be raised by issuing bonds, and that the ordinary call an election for that purpose. This action of the grand jury appears to have been purely of an advisory or recommendatory character. Certain taxpayers residing in that portion of originally Montgomery county which was cut off therefrom and formed a part of the new County of Toombs filed an equitable proceeding to enjoin the collection from them of the two items of $5 on the thousand dollars of valuation, and twenty-five cents on the one thousand dollars. They did not contest the right to collect from them the remaining taxes levied for county purposes. On the hearing the presiding judge granted the injunction, and the defendants excepted.

The county commissioners, under recommendation of the grand jury at the spring term, levied, for general county purposes, taxes aggregating the amount which had been recommended, in accordance with the Political Code, §399. In addition to this they levied a tax of $5 on each one thousand dollars of valuation "to build or repair court-houses or jails," etc. It is clear, both from the method of procedure and from the power asserted in the answer of the defendants, that as to this item they were not proceeding to levy ordinary taxes for general county purposes, but were relying upon the Political Code, §395, authorizing the ordinaries (here commissioners) to levy an extra tax sufficient to carry into effect sections 351 and 352 of that code. It is stated, in the answer, that this levy "was made thus large in order that defendants might have some funds with which to pay in part the price of a new court-house, which they intended constructing had it not been for the litigation instituted by the plaintiffs for the purpose of preventing its construction. Defendants deny that they have no right to levy a tax for court-house purposes without the recommendation of the grand jury; but allege, to the contrary, that the law especially vests them with the right to exercise a discretion in this matter, and distinctly declares that the right may be exercised independently of any action of the grand jury." The answer then proceeds to assert the necessity for building a new court-house. It is thus clear that the effort to levy this item is based upon the power to levy an extra tax for particular purposes. So far as disclosed, no contract had been let, and no liability on the part of the County

of Montgomery had arisen on account of the court-house, before the passage of the act laying out the County of Toombs; and the question is whether the county commissioners of Montgomery county had authority, after the passage of the act referred to, and two days before the election of county officers in the new county, to impose an extra tax for the purpose of building a court-house in Montgomery county, and to collect a part thereof from former taxpayers of that county, whose residences and property had been included in the limits of the new county.

Section ten of the general act of August 21, 1905, declares that "all taxes due the State and county by persons residing in the new county, or upon property included within the limits of the new county at the time of the creation of the new county, shall be payable to the tax-collector of the county from which said territory was taken, and the tax-collector of said original county is hereby authorized to issue execution for the collection of such taxes, and the same shall be enforced and collected by the officers of the county or counties from which the territory for said new county was taken." The question arises, what did the legislature intend by the expression "all taxes due  .  .  at the time of the creation of the new county"?   Did they mean ordinary taxes which were regularly imposed by operation of law, or unusual extra taxes which had become a liability by previous levy or which were required to meet liabilities already incurred, or did they contemplate that after the time when the act was passed laying out the new county, and just before its organization by electing officers, the commissioners of the old county might impose an extra tax for the purpose of building a court-house, a tax which was not one of the regular and ordinary burdens, but was voluntarily imposed just at that time, thus placing an unusual and extra burden upon the citizens of the new county while in the very act of departing from the old one?   The distinction between the two classes of taxes is plain.   The one is a regular burden imposed by law, the other may be called an occasional or contingent extra tax which may or may not be imposed in a certain year, and the levying of which and its amount is subject to judicial review. Pol. Code, §396.   As said in the brief of counsel for defendant in error, the legislature desired to give the old county the benefit of taxes to meet current expenses and prevent any great disturbance in its financial affairs, but not to lay oppressive burdens on owners

of property forming part of the new county. Some burdens must in the nature of things result; but that can not be avoided. By section five of the act it was declared that the ordinary of the new county might levy, for the first year after his qualification, an extra tax, for county purposes, of such per cent. upon the State tax as might be necessary, according to his discretion, and might make a temporary loan for the purpose of supplying revenue for the new county. Possibly the new county may be temporarily supplied with accommodations for the transaction of public business by renting, but it must have a court-house and a jail. The expense of building these will fall upon the taxpayers of that county. If by the levy of an extra tax, made after the laying out of the new county, and while it was in process of organization, such of its citizens as formerly resided and had property in the old county can be made to contribute to the erection of a court-house in that county as well as in the new one, the legislature have indeed placed a double burden upon them. Of course, if the act of the legislature is plain and unambiguous, it can not be changed on account of any resulting hardship. But in construing the legislative intent as to the meaning of the expression "all taxes due . . at the time of the creation of the new county," the general legislative purpose, and whether or not it was to make these citizens help pay for two court-houses, may fairly be considered.

The act to lay out and organize the County of Toombs declares that "from and after the passage of this act a new county shall be and is laid out." As already mentioned, at that time it does not appear that any contract had been made or any liability rested upon Montgomery county on account of the contemplated building of a new court-house, or that any tax had been levied therefor or would be levied therefor during the year. We have not overlooked section twelve of the act approved August 21, 1905 (the act in regard to Toombs county having been approved August 18). But the entire legislative intent is to be considered.

The law imposes certain general burdens upon counties, which must be borne by taxation, and the plaintiffs do not seek to enjoin the collection of such taxes, except as noticed below; nor do we hold that this could be done, although the commissioners made the levy after August 18. But what we do hold is, that after the passage of the act to lay out and organize the new county, and while

it was in process of organization, the county commissioners of the old county could not bind persons whose residences. and property were thus cut off, by the levy of a special or extra tax, not for the purpose of meeting a liability arising prior to the creation of the new county, nor for taxes required by law to be raised in that year, nor for an extra tax already·levied, but for the purpose of building a new court-house thereafter in the parent county.　In *Vanover* v. *Davis, 27 Ga.* 357, it was said: "No power should be more carefully guarded than the taxing power." See also *Commissioners of Habersham County* v. *Porter Mfg. Co., 103 Ga.* 613; *Barlow* v. *Ordinary, 47·Ga.* 641.　Of course, if any of the parties who have become residents of the new county still remain also taxpayers of Montgomery county, to that extent they stand upon the same basis as other taxpayers of that county.

It was also suggested that section 406 of the Political Code requires that as soon as the county tax is assessed for the year, the order of the ordinary (or commissioners) must be advertised for thirty days, and a copy furnished to the tax-collector, and that the tax did not become due until after such advertisement.　We do not think, however, that the expression, "all taxes due the State and· county," as used in the act of August 21, 1905, is to be construed in the narrow sense of taxes the time for paying which had arrived or passed before the act creating the new county was approved. In its larger sense the word "due" is often used to cover liabilities matured and unmatured, or as importing an existing obligation, whether the time of payment has arrived or not.　People *v.* Vail, Abb. N. C. (N. Y.) 210; United States *v.* State Bank, 31 U. S. 29; Sand-Blast File-Sharpening Co. *v.* Parsons, 54 Conn. 310; Scudder *v.* Coryell, 10 N. J. L. 341 (2d ed. 403, 410).　It is the character of the tax as a lawful burden, existing at the time of the creation of the county, to which the act refers, rather than to the mere date of its collection.　The provision in regard to advertising for thirty days after the tax is assessed is applicable to the entire assessment for county purposes, and not specially to the items attacked.　"Liens for taxes　.　.　cover the property of taxpayers liable to tax, from the time fixed by law for valuation of the same in each year until such taxes are paid."　Civil Code, §2791.

It might appear, on casual consideration, that the item in regard to the county tax for roads stood upon the same basis as the item

above discussed; but a more careful consideration will show that it does not do so. In counties where the alternative road law is in force, the Political Code, §575, declares that "The commissioners of roads and revenues, or ordinary, as the case may be, shall levy a tax, additional to any now authorized by law, of not more than two tenths of one per cent. on all the taxable property of the county," etc. Thus by law the duty of levying this tax is prescribed, and its amount is limited. It is not an extra tax which may or may not be levied according to contingencies, as is the case of a tax for building a new court-house, which may be necessary or not, or only become necessary once in many years. It was more like taxes for ordinary county purposes, or like a fixed charge. Recommendation by the grand jury was not necessary as to this item. The law imposed the duty and obligation. The commissioners declared it and assessed the amount. If no taxes are to be treated as due within the meaning of this act unless they were levied by the county commissioners before the date of the act laying out Toombs county, then not even the taxes conceded by plaintiffs to be collectible would be so in law, and their payment would be at the will of the taxpayers, as none of them were levied by the commissioners until October 2. The action of the grand jury does not of itself levy the tax, but recommends it; and provision is made by law for cases where the grand jury fails to act. Pol. Code, §§399, 401.

The law does not require the tax digest to be completed until August 1, and contemplates that there may perhaps be a delay beyond that time. Pol. Code, §918. The county commissioners may not be able to act immediately upon the completion of the digest. This was known to the legislature when the act approved August 21 was introduced on June 29, passed by the House of Representatives on August 8 (House Journal, 77, 645), and by the Senate on August 14 (Senate Journal, 455); and it could not have been contemplated that no county tax should be considered due or collectible unless it had been theretofore actually levied. That the alternative road law is not in force in all counties may account for the fact that the road tax provided for in section 575 of the Political Code is not referred to in section 404. True that tax will most likely be expended in whole or in part during the succeeding year. But so also will be the other ordinary taxes levied. It is possible that the legislature may or may not have actually had before it

section 575 of the Political Code; but the result of that section is to create a permanent annual tax, where the alternative road law is in force; and we can not see any legitimate ground on which we can distinguish that particular item from other items of regular annual tax burdens, in respect to the point under consideration.

.    We affirm the judgment, with direction that the injunction be so modified as not to include the item of road tax.

*Judgment affirmed, with direction.    All the Justices concur.*