MICHIGAN CHANDELIER CO. *v.* MORSE.

1. ASSIGNMENTS—CONSTRUCTION.

If an assignment, prepared by assignee's agent, of any and all money due assignor as subcontractor for electrical work ·on a building, is susceptible of two constructions by reason of doubt, it is to be construed most strongly against the· assignee.

2. CONTRACTS—CONSTRUCTION IN CASE OF DOUBT.

In case of doubt, an instrument must be strictly construed against the party by whose agent it was drafted.

3. SAME—CONSTRUCTION—AMBIGUITIES.

A contract is to be construed, as to its imperfections and ambiguities, most strongly against the agents who drew it and are responsible therefor.

4. ASSIGNMENTS—CONSTRUCTION OF TERM "DUE"—CONTINGENCIES.

The word "due," as used in subcontractor's assignment of "any and all money due" him from the contractor, means "owed" or "owing to" and is often used to signify the present existence of a debt, although to be paid thereafter; in its larger sense, it is often used to cover liabilities matured or unmatured, or as importing an existing obligation, whether the time of payment has arrived or not; it is defined as "owed, owing, owing and unpaid, remaining unpaid, an indebtedness," and signifies a debt or a state of indebtedness, but it does not include contingencies which may ripen into an absolute indebtedness upon the future performance of contract obligations.

5. SAME—MONEY TO BE EARNED IN THE FUTURE—PERFORMANCE OF A CONTRACT.

An equitable assignment of money to be earned in the future, either as wages or by the performance of a contract, does not become operative until something has become payable under the contract.

6. EVIDENCE—OMISSION—MISTAKE.

An omission or a mistake is not an ambiguity within the parol evidence rule.

---

Interpretation of contracts, see 1 Restatement, Contracts, §§ 235, 236.

7. SAME—PAROL EVIDENCE—LATENT AMBIGUITY.

Parol evidence, under the guise of a claimed latent ambiguity, is not permissible to vary, add to, or contradict the plainly expressed terms of a written contract or to substitute a different contract for it to show an intention or purpose not therein expressed.

8. SAME—AMBIGUITY—PAROL EVIDENCE.

The rule that, where an ambiguity is created by parol, it may be removed by parol, was never intended to violate the rule that a writing shall not be contradicted or explained by inferior testimony.

9. CONTRACTS—PRACTICAL INTERPRETATION BY THE PARTIES.

Practical interpretation of a contract by the parties thereto can be regarded only where the contract is of doubtful or ambiguous meaning.

10. EVIDENCE—CONSTRUCTION OF WRITINGS.

Extraneous evidence is not allowable to interpret a writing which has no need of interpretation.

11. CONTRACTS—INTENTION—PRACTICAL CONSTRUCTION.

The intention of the parties to a written contract free from ambiguity, which is shown upon its face, must be followed though contrary to the practical interpretation of the parties even if such practical construction has been acquiesced in for a long time.

12. SAME—INTENTION—CONSTRUCTION—INACCURATE EXPRESSION.

If the intention of the parties to a contract can be clearly discovered, a court will give effect to it and construe the words accordingly, irrespective of inaccuracy of expression or inaptness of words used in the instrument in a legal view.

13. SAME—CONSTRUCTION—PRESUMPTION AS TO USE OF TERMS.

In construing a contract, a court makes no attempt to ascertain the actual mental processes of the parties to a particular contract as the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest.

14. SAME—INTENTION—CONSTRUCTION.

It is not within the function of the judiciary to look outside of an instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it, as the sole duty of a court is to find out what was meant by the language of the instrument.

15. SAME—INTENT OF UNAMBIGUOUS WORDS.

In construing a contract in which the words used are not ambiguous or uncertain, the court must look for the intent of the parties in the words used in the instrument.

16. SAME—INTENT—SUPREME COURT.

The Supreme Court does not have the right to make a different contract for parties or to look to extrinsic testimony to determine their intent when the words used by the parties are clear and unambiguous.

17. ASSIGNMENTS—"ANY AND ALL MONEY DUE"—CONSTRUCTION—SUBCONTRACTORS.

A subcontractor's assignment of "any and all money due" from general contractor on a certain building job for which assignor had contracted to do the electrical work assigned merely the amount due and owing at time the assignment was made and did not assign entire amount which would be due from general contractor upon completion of the work.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 8, 1941. (Docket No. 39, Calendar No. 41,383.) Decided March 11, 1941.

Garnishment proceedings by Michigan Chandelier Company, a corporation, against Earl C. Morse, individually and doing business as E. C. Morse & Company, principal defendant; and Floyd J. Skidmore, individually, and Floyd J. Skidmore and Stanley J. Skidmore, copartners doing business as F. J. Skidmore & Son, garnishee defendants; and Edwin R. Crosby, doing business as Advance Electric Supply Company, interpleaded defendant. From judgment for plaintiff, defendant Crosby appeals. Affirmed.

*Marvin & Neller,* for plaintiff.

*Van Benschoten & Van Benschoten,* for defendant Edwin R. Crosby.

BOYLES, J. The issue in this case arises out of a garnishee proceeding between the plaintiff and

Edwin R. Crosby, doing business as Advance Electric Supply Company, as an interpleaded defendant.

Plaintiff started suit against Earl C. Morse, individually, and doing business as E. C. Morse & Company, and at the same time caused a garnishee summons to be issued and served upon Floyd J. Skidmore, individually, and Floyd J. Skidmore and Stanley J. Skidmore, copartners, doing business as F. J. Skidmore & Son, as garnishee defendants. The principal defendant did not deny the debt, and judgment was ultimately entered against Earl C. Morse in the principal suit.

The garnishee suit against the Skidmore concern proceeded through the several stages of interrogatories, second garnishee summons and answer, and issue joined. In this suit, the Skidmore concern, as garnishee defendant, finally disclosed the following situation: The Skidmore concern had a general contract to erect a Kroger store building and had contracted with E. C. Morse & Company for the latter to do the electrical work on this building; subsequent to making this contract and at about the time Morse actually began work, and before the garnishee summons was served, the Skidmore concern had accepted an assignment of all money due Morse on the Kroger store job in favor of Edwin R. Crosby, doing business as the Advance Electric Supply Company. This assignment was as follows:

"486 W. Michigan Ave.,
"Battle Creek, Michigan.
"August 12, 1939.

"F. J. Skidmore & Son,
"52 Capitol Avenue, S.W.,
"Battle Creek, Michigan.

"*Gentlemen:*

"For value received, we, E. C. Morse & Company, do hereby assign to the Advance Electric Supply

Company, 1102 N. Saginaw Street, Flint, Michigan, any and all money due us on the Kroger store job covered by your job order No. 409 (this being the building owned by Glen Cross).

"E. C. MORSE & COMPANY.

"E. C. MORSE.

"(Earl C. Morse.)

"Accepted as above:
"F. J. SKIDMORE & SON,
"By F. J. SKIDMORE. (Sgd.)"

It was shown in the garnishee proceedings that the Skidmore concern owed Morse practically nothing at the time the assignment was executed and accepted; but that the Skidmore concern, when the final garnishee summons was served, owed either Morse or Edwin R. Crosby, doing business as the Advance Electric Supply Company, $725.91, but that this money would not be due until the job was completed. Edwin R. Crosby, doing business as the Advance Electric Supply Company, was thereupon interpleaded as a defendant; the Skidmore concern paid the money into court and was released from further liability. The issue in the case now stands between the plaintiff and Edwin R. Crosby, doing business as the Advance Electric Supply Company. Issue was joined between them in the trial court and came on for hearing. The court below found that the plaintiff was entitled to the money, and the Advance Electric Supply Company appeals.

The sole question before us is, what is the legal effect of the assignment? Plaintiff claims this assignment operates only to assign those moneys, if any, that were due and owing from the Skidmore concern to Morse at the time the assignment from Morse to the Advance Electric Supply Company was executed and accepted by the Skidmore con-

cern.  The Advance Electric Supply Company claims that this assignment is ambiguous and open to construction, and should be construed to mean not only the money due and owing at the time of its execution, but also to include all money *to become due* and owing thereafter from the Skidmore concern to Morse on the Kroger store job.  If this contention is upheld, the money deposited in court belongs to Crosby, doing business as the Advance Electric Supply Company, the interpleaded defendant and appellant.

The issue narrows down to whether the assignment, dated August 12, 1939, of "any and all money due us on the Kroger store job" is limited to "money *now* due," or does it mean "any and all money due us *or to become due us?*"  The precise question has not been before this court.

The assignment in question was prepared by the agent of defendant Crosby.  If it can be said that it is susceptible of two constructions by reason of doubt or uncertainty, the assignment is to be construed most strictly against the interpleaded defendant in whose behalf it was prepared.  It is an elementary rule of construction that, in case of doubt, the instrument is to be strictly construed against the party by whose agent it was drafted. 6 C. J. S. p. 1138; 17 C. J. S. p. 751; *Marks-Fiske-Zeiger Co.* v. *American Bushings Corp.,* 250 Mich. 583; *Olsen* v. *Fry,* 234 Mich. 233.  A contract is to be construed, as to its imperfections and ambiguities, most strongly against the agents who drew it and are responsible therefor.  *Hanley* v. *Porter,* 238 Mich. 617.

"Due" means owed or owing to.  The word "due" is often used to signify the present existence of a debt, although to be paid thereafter.  An affidavit annexed to a chattel mortgage stating that a certain

sum was "due" is not defective, the money being owed at the time although payable in the future. *Metropolitan Store & Saloon Fixture Co.* v. *Albrecht*, 70 N. J. Law, 149 (56 Atl. 237). The word "due," in its larger sense, is often used to cover *liabilities* matured or unmatured, or as importing *an existing obligation,* whether the time of payment has arrived or not. *Pope* v. *Matthews*, 125 Ga. 341 (54 S. E. 152), citing *People* v. *Vail*, 6 Abb. N. C. (N. Y.) 206; *United States* v. *State Bank of North Carolina,* 6 Pet. (31 U. S.) 29 (8 L. Ed. 308); *Sand-Blast File-Sharpening Co.* v. *Parsons*, 54 Conn. 310 (7 Atl. 716); *Scudder* v. *Coryell,* 10 N. J. Law, 340. The word "due" is defined as owed, owing, owing and unpaid, remaining unpaid, an indebtedness. *Sather Banking Co.* v. *Arthur R. Briggs Co.,* 138 Cal. 724 (72 Pac. 352); *Crocker-Woolworth Nat'l Bank of San Francisco* v. *Carle,* 133 Cal. 409 (65 Pac. 951). The term "due" signifies a debt or a state of indebtedness. It does not include contingencies which may ripen into an absolute indebtedness upon the future performance of contract obligations. An instrument assigning "all our interest in warrants or vouchers due us from said county" was held not to include money subsequently earned by the assignor. *Ryan* v. *Douglas County,* 47 Neb. 9 (66 N. W. 30).

In the above case, as in the case at bar, no work had been performed on the contract at the time of the assignment. and, therefore, nothing was due at that time. The fund which was the subject of garnishment and there claimed by the interpleaded defendant was the result of labor and materials furnished subsequent to the assignment. It had no actual existence on the date of assignment and the court held that it was not "due," therefore, not within the meaning of the assignment.

Where the subject of an equitable assignment is money to be earned in the future, either as wages or by the performance of a contract, the assignment does not become operative until something has become payable under the contract. *Aetna Trust & Savings Co.* v. *Nackenhorst,* 188 Ind. 621 (122 N. E. 421, 123 N. E. 353, 125 N. E. 213).

"An omission or mistake is not an ambiguity. Parol evidence under the guise of a claimed latent ambiguity is not permissible to vary, add to or contradict the plainly expressed terms of this writing or to substitute a different contract for it to show an intention or purpose not therein expressed. The principles 'of law applicable to the situation here are concisely summed up, with citation of abundant sustaining authority, in the following texts:

" 'The rule that where an ambiguity is created by parol it may be removed by parol, was never intended to violate the rule that a writing shall not be contradicted or explained by inferior testimony.' 22 C. J. p. 1194. * * *

"Plaintiff's contention that the practical construction put upon this franchise contract by the parties themselves is controlling against the strict construction now contended for, is necessarily predicated upon the proposition that the writing is open to construction in the particular claimed, for practical interpretation by the parties can only be regarded where the contract is of doubtful or ambiguous meaning. Extraneous evidence is not allowable to interpret a writing which has no need of interpretation.

" 'If clear and free from ambiguity, the intention shown upon its face if written must be followed, though contrary to the practical interpretation of the parties, and even if such practical construction has been acquiesced in for a long period of time.' 2 Page on Contracts (1905), § 1126.

" 'Before any appeal can be made to practical construction, it must appear that the meaning is doubtful.' *Fairbank* v. *United States,* 181 U. S. 283, 311 (21 Sup. Ct. 648, 45 L. Ed. 862)." *Township of Zilwaukee* v. *Railway Co.,* 213 Mich. 61, 71, 72.

"Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument in a legal view, if the intention of the parties can be clearly discovered, the court will give effect to it and construe the words accordingly. It must not be supposed, however, that an attempt is made to ascertain the actual mental processes of the parties to a particular contract. The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. It is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties and then carry out that intention regardless of whether the instrument contains language sufficient to express it; but their sole duty is to find out what was meant by the language of the instrument." 12 Am. Jur. pp. 746–748.

The question before us is as to the legal effect of the words used in the assignment, rather than a question of construction or interpretation of a contract. The words themselves are not ambiguous or uncertain. We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning. The fact that no money was actually due at the time of the assignment does not permit us to enlarge or change the meaning of the words used by the parties. If we were permitted to glean from the mind of the assignor his actual intent when the assignment was made, we might find that Morse did not intend to assign to Crosby all of the money that the Skidmore concern would owe him for his entire electrical job. Under the construction claimed by defendant, Morse himself would receive no money whatever out of the job,

it would all go to Crosby. It is not for this court to determine that such was the meaning of the assignment, in view of the express language used therein.

We find no merit in the other question argued by appellant.

Judgment affirmed, with costs.

SHARPE, C. J., and BUSHNELL, CHANDLER, NORTH, McALLISTER, WIEST, and BUTZEL, JJ., concurred.