*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF WAYNE RETIREES ASSOCIATION,
CHRISTOPHER JOHNSON, TIMOTHY
REYNOLDS, ROBERT ENGLISH, EDMUND
ROTHFELDER, DANIEL HAMANN, and
CHERYL FISHER, on behalf of themselves and
all others similarly situated,

UNPUBLISHED
October 15, 2019

Plaintiffs-Appellants,

v

Nos. 343522; 343916
Wayne Circuit Court
LC No. 17-009118-CK

CITY OF WAYNE,

Defendant-Appellee.

Before: FORT HOOD, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs, retired employees of the city of Wayne (the City), filed this proposed class action against the City after it made changes affecting retirees' healthcare coverage benefits. Plaintiffs alleged that they have a vested right to receive healthcare benefits according to collective-bargaining agreements (CBAs) or other agreements in effect when each employee retired. The parties filed cross-motions for summary disposition with respect to whether the City could lawfully proceed with its proposed changes. The trial court denied plaintiffs' motion for summary disposition and granted the City's cross-motion for summary disposition under MCR 2.116(C)(10) on the ground that none of the governing CBAs awarded lifetime healthcare benefits to retirees. Plaintiffs appeal that order as of right in Docket No. 343522. After the court entered the order granting summary disposition to the City, it entered an order dissolving a preliminary injunction that was in effect while this matter was pending, dismissing plaintiffs' complaint with prejudice, and denying as moot plaintiffs' motion to certify this matter as a class action. Plaintiffs appeal the latter order as of right in Docket No. 343916. The appeals have been consolidated. We affirm in both appeals.

## I. FACTUAL BACKGROUND

The underlying facts are not in dispute. For many years, the City has paid retiree healthcare benefits pursuant to CBAs in effect when each employee retired. The CBAs specify the City's obligation to pay for healthcare coverage for retirees in varying amounts, depending on the retired employee's years of seniority. The CBAs contained language that these obligations would continue "[f]or the life of this agreement." The CBAs also contained language generally referring to "the duration of this agreement," which expressly limited all provisions of the CBAs to the effective term of each CBA. When the City experienced economic problems, it began to make changes to retiree healthcare benefits. In 2017, the City proposed eliminating all healthcare benefits for retirees. Plaintiffs filed this action alleging that they have a vested right to receive lifetime healthcare benefits, and therefore, any modification or reduction to their benefits without their consent is a breach of contract. The trial court entered a preliminary injunction to prevent the City from proceeding with its planned changes while this matter was pending.

Plaintiffs conceded that the applicable CBAs or other agreements do not expressly make healthcare coverage a vested benefit. They argued, however, that the CBAs were ambiguous with respect to whether retiree healthcare benefits were intended to extend beyond the life or duration of each CBA. The trial court disagreed, concluding that "[t]he CBAs clearly expressed that the retiree health care benefits were guaranteed for the existence of the particular CBA in which each retiree retired under." The court rejected plaintiffs' argument that CBAs were either patently or latently ambiguous, and thus declined to consider extrinsic evidence to contradict the express language of the CBAs. Accordingly, the court denied plaintiffs' motion for summary disposition and granted the City's cross-motion for summary disposition. Plaintiffs challenge that decision.

## II. INTERPRETING COLLECTIVE-BARGAINING AGREEMENTS

We review de novo a trial court's decision whether to grant or deny summary disposition. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). The trial court granted summary disposition for the City under MCR 2.116(C)(10). "A motion for summary disposition under MCR 2.116(C)(10) shall be granted if there is no genuine issue regarding any material fact and the movant is entitled to judgment as a matter of law." *Bazzi*, 502 Mich at 398. The proper interpretation of a contract is also reviewed de novo by this Court. *Id*.

Plaintiffs claim that they are entitled to healthcare benefit as a vested right, and observe that "vested retirement rights may not be altered without the [retiree's] consent." *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 511; 879 NW2d 897 (2015). In *Harper Woods Retirees Ass'n*, 312 Mich App at 511, this Court explained:

> [I]n order to demonstrate that a benefit conferred in a CBA or personal contract is deemed vested, a retiree must show that (1) he or she had a contractual right to the claimed benefit *that was to continue after the agreement's expiration*, and (2) the right was included in his or her respective contract at the time of retirement. [Emphasis added.]

It is undisputed that plaintiffs had a contractual right to healthcare benefits as part of their respective retirements under the CBAs in effect when they retired. The issue, therefore, is

whether the City contractually agreed to extend the right to retiree healthcare benefits beyond the duration of each CBA. It would seem evident from the language of the CBAs that the City did not so agree.

In *Harper Woods Retirees Ass'n*, 312 Mich App at 511, the plaintiffs sought retiree healthcare benefits under CBAs that, like the CBAs in this case, did not contain express language providing that retiree healthcare benefits extended beyond the periods the CBAs were in effect. This Court explained that courts may not presume that retiree benefits awarded under a CBA extend beyond the duration of the CBA; rather, an intent to extend benefits beyond a CBA must be expressly stated:

> In *M&G Polymers v Tackett*, 574 US ___; 135 S Ct 926, 932; 190 L Ed 2d 809 (2015), the United States Supreme Court rejected the Sixth Circuit's decision in *UAW v Yard-Man*, 716 F2d 1476 (CA 6, 1983), which held that in the absence of contrary extrinsic evidence, courts should presume that retiree benefits provided in a CBA are guaranteed for the lifetime of any employee who retires under the CBA. The *Yard-Man* court "inferred that parties would not leave retiree benefits to the contingencies of future negotiations, and that retiree benefits generally last as long as the recipient remains a retiree . . . [which] 'outweigh[ed] any contrary implications derived from a routine duration clause terminating the agreement generally.' " *Tackett*, 574 US at ___; 135 S Ct at 936, quoting *Yard-Man*, 716 F2d at 1482-1483 (second alteration in original). Thus, although the *Yard-Man* court recognized that "traditional rules of contractual interpretation require a clear manifestation of intent before conferring a benefit or obligation," the court concluded that the duration of the conferred benefit was not subject to this conventional restraint. *Tackett*, 574 US at ___; 135 S Ct at 936 (quotation marks and citation omitted).
>
> In *Tackett*, the Supreme Court overruled *Yard-Man*, holding that the presumption that retirement benefits vest for the lifetime of a retiree violates traditional rules of contract interpretation. The Supreme Court explained that under traditional contract interpretation principles, "courts should not construe ambiguous writings to create lifetime promises," and that generally, " 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.' " *Tackett*, 574 US at ___; 135 S Ct at 936-937, quoting *Litton Fin Printing Div, Litton Business Sys, Inc v NLRB*, 501 US 190, 207; 111 S Ct 2215; 115 L Ed 2d 177 (1991). The Supreme Court noted that traditional contract principles do not "preclude the conclusion that the parties intended to vest lifetime benefits for retirees" because "a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's expiration." *Tackett*, 574 US at ___; 135 S Ct at 937 (quotation marks and citation omitted; alterations in original). However, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id*. at ___; 135 S Ct at 937. We conclude that the Supreme Court's reasoning in *Tackett* is consistent with Michigan's contract jurisprudence regarding CBAs, which applies with equal force in both the public and private sectors. As our Supreme Court has explained:

The foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements. This principle applies no less strongly to collective bargaining agreements: when parties to a collective bargaining agreement bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. A party to the collective bargaining agreement has a right to rely on the agreement as the statement of its obligations on any topic covered by the agreement. [*Macomb Co v AFSCME Council 25*, 494 Mich 65, 80; 833 NW2d 225 (2013) (quotation marks and citations omitted).]

The task, then, is to examine each of the CBAs and personal contracts in effect at the time of each respective class member's retirement, and to determine (1) whether the language governing retiree healthcare benefits indicates that the parties intended the same benefits to continue after expiration of the agreements, or (2) whether the benefits terminated after expiration of the agreements, so that defendant was permitted to alter the benefits under future contracts. See *Butler* [*v Wayne Co*], 289 Mich App [664,] 672[; 798 NW2d 37 (2010).] [*Harper Woods Retirees Ass'n*, 312 Mich App at 511-513 (first, second, third, and fourth alteration in original).]

In the case at bar, the trial court followed *CNH Indus NV v Reese*, 583 US ___; 138 S Ct 761; 200 L Ed 2d 1 (2018). In that case, the Supreme Court held that the Sixth Circuit Court of Appeals erred by relying on the inferences recognized in *Yard-Man* to hold that a CBA was ambiguous with regard to lifetime benefits for retirees, thereby allowing the court to consider extrinsic evidence. *Id.* at ___; 138 S Ct at 763. Instead, the Court reiterated that, consistent with *Tackett*, courts must apply ordinary principles of contract law when interpreting a CBA and rejected the analysis from *Yard-Man*, which allowed lifetime vesting of benefits to be imposed on the basis of inferences alone. *Id.* at ___; 138 S Ct at 763-765.

The Court in *Reese*, 583 US ___;138 S Ct at 765-766, explained that reversal of the Sixth Circuit's decision was required because that court failed to follow the plain language of the CBA at issue. The Court stated:

The decision below does not comply with *Tackett's* direction to apply ordinary contract principles. True, one such principle is that, when a contract is ambiguous, courts can consult extrinsic evidence to determine the parties' intentions. See 574 U.S., at ___, 135 S. Ct., at 930 (GINSBURG, J., concurring) (citing 11 R. Lord, Williston on Contracts § 30:7, pp. 116-124 (4th ed. 2012) (Williston)). But a contract is not ambiguous unless, "after applying established rules of interpretation, [it] remains reasonably susceptible to at least two reasonable but conflicting meanings." *Id.*, § 30:4, at 53-54 (footnote omitted). Here, that means the 1998 agreement was not ambiguous unless it could reasonably be read as vesting health care benefits for life.

The Sixth Circuit read it that way only by employing the inferences that this Court rejected in *Tackett*. The Sixth Circuit did not point to any explicit terms, implied terms, or industry practice suggesting that the 1998 agreement vested health care benefits for life. Cf. 574 U.S., at ___, 135 S. Ct., at 930-931 (GINSBURG, J., concurring). Instead, it found ambiguity in the 1998 agreement by applying several of the *Yard-Man* inferences: It declined to apply the general durational clause to the health care benefits, and then it inferred vesting from the presence of specific termination provisions for other benefits and the tying of health care benefits to pensioner status.

*Tackett* rejected those inferences precisely because they are not "established rules of interpretation," 11 Williston § 30:4, at 53-54. The *Yard-Man* inferences "distort the text of the agreement," fail "to apply general durational clauses," erroneously presume lifetime vesting from silence, and contradict how "Congress specifically defined" key terms in ERISA. *Tackett*, 574 U.S., at ___, ___, 135 S. Ct., at 936-937. *Tackett* thus rejected these inferences not because of the *consequences* that the Sixth Circuit attached to them—presuming vesting versus finding ambiguity—but because they are not a valid way to read a contract. They cannot be used to create a reasonable interpretation any more than they can be used to create a presumptive one.

Tellingly, no other Court of Appeals would find ambiguity in these circumstances. When a collective-bargaining agreement is merely silent on the question of vesting, other courts would conclude that it does *not* vest benefits for life. Similarly, when an agreement does not specify a duration for health care benefits in particular, other courts would simply apply the general durational clause. And other courts would not find ambiguity from the tying of retiree benefits to pensioner status. The approach taken in these other decisions "only underscores" how the decision below "deviat[ed] from ordinary principles of contract law." *Tackett, supra*, at ___, 135 S. Ct., at 937.

Shorn of *Yard-Man* inferences, this case is straightforward. The 1998 agreement contained a general durational clause that applied to all benefits, unless the agreement specified otherwise. No provision specified that the health care benefits were subject to a different durational clause. The agreement stated that the health benefits plan "r[an] concurrently" with the collective-bargaining agreement, tying the health care benefits to the duration of the rest of the agreement. App. to Pet. for Cert. A–114. If the parties meant to vest health care benefits for life, they easily could have said so in the text. But they did not. And they specified that their agreement "dispose[d] of any and all bargaining issues" between them. *Id*., at A–115. Thus, the only reasonable interpretation of the 1998 agreement is that the health care benefits expired when the collective-bargaining agreement expired in May 2004. "When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." *Tackett, supra*, at ___, 135 S. Ct., at 930 (GINSBURG, J., concurring) (citing 11 Williston § 30:6, at 98-104). [Footnotes omitted; alterations in original]

The Michigan Supreme Court recently confronted this issue in *Kendzierski v Macomb Co*, 503 Mich 296, 309-310; 931 NW2d 604 (2019),[1] and decided to follow *Reese*, stating that "[a]lthough this Court is not bound to follow the United States Supreme Court's opinion in *Reese*, we choose to follow it because it is fully consistent with Michigan's own principles of contract law."

In *Kendzierski*, like *Reese*, our Supreme Court also interpreted the CBAs by applying ordinary contract principles:

> "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 143-144; 881 NW2d 95 (2016). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." *Id*.

> "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017). In addition, "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). However, "ambiguity is a finding of last resort . . . ." *Mayor of the City of Lansing v Pub Serv Comm*, 470 Mich 154, 165 n 6; 680 NW2d 840 (2004). That is, "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Id*. at 165 (quotation marks, citation, and brackets omitted). "[W]e will not create ambiguity where the terms of the contract are clear." *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). "[C]ourts cannot simply ignore portions of a contract . . . in order to declare an ambiguity." *Klapp*, 468 Mich at 467.

> "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id*. "The general rule of contracts is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in courts." *Terrien v Zwit*, 467 Mich 56, 71; 648 NW2d 602

---

[1] Notably, plaintiffs rely on our opinion in *Kendzierski*, which has since been reversed, for a large portion of their argument. *Kendzierski*, 503 Mich at 301.

(2002) (quotation marks, citation, and brackets omitted). "When a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Rory*, 473 Mich at 468-469. "This approach, where judges divine the parties' reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). "[T]he rule of reasonable expectations clearly has no application when interpreting an unambiguous contract because a policyholder cannot be said to have reasonably expected something different from the clear language of the contract." *Id*. at 62.

These contract principles apply to CBAs just as they do with regard to any other contract. As this Court has explained:

> The foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements. This principle applies no less strongly to collective bargaining agreements: when parties to a collective bargaining agreement bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules—a new code of conduct for themselves—on that subject. A party to the collective bargaining agreement has a right to rely on the agreement as the statement of its obligations on any topic covered by the agreement. [*AFSCME Council 25*, 494 Mich at 80 (quotation marks and citations omitted).] [*Kendzierski*, 503 Mich at 311-313 (footnotes omitted; first, second, and third alteration in original).]

## III. PATENT AMBIGUITIES

In the case at bar, plaintiffs contend that the CBAs contain a patent ambiguity regarding whether healthcare benefits were intended to extend beyond the duration of the CBAs. A patent ambiguity "arises 'from the face of the document.' " *Kendzierski*, 503 Mich at 317 (citation omitted). Plaintiffs argue that the CBAs are patently ambiguous because the agreements variably use the phrases "for the life of this Agreement" and "for the duration of this Agreement." Plaintiffs appear to claim that any reference to the "duration" of an agreement refers only to the period in which a specific CBA was in effect. In contrast, the phrase "life of the Agreement," when used in reference to retiree healthcare and pension benefits, suggests that the parties intended for those provisions to extend beyond the duration of the CBA for the payment of retiree healthcare benefits because any terms involving pensions would necessarily extend beyond the duration of the CBA. We disagree.

In support of their argument, plaintiffs rely on a CBA involving the Wayne Fire Fighters Association AFL-CIO, Local 1620, International Association of Firefighters (the Firefighters),

which , by the plaint terms of the agreement, was in effect from July 1, 1998 through June 30, 2004. Section 13.A. of that agreement addresses the duration of the agreement as follows:

> The provisions of this Agreement shall be effective as of July 1, 1998, and shall continue and remain in full force and effect, to and including, June 30, 2004, and thereafter for successive periods of one year unless either party shall, on or before April 1, 2004, serve written notice on the other party of a desire to terminate, modify, alter, renegotiate, change or amend this Agreement . . . .

Plaintiffs argue that there is a patent ambiguity because the phrase "for the life of this Agreement" is used in that CBA to discuss retiree healthcare benefits. That agreement states:

> For the life of this Agreement, employees retiring from the Fire Department shall have the above health insurance premiums paid for by the City in accordance with the following chart:

| | |
|---|---|
| After 25 or more years of seniority | 100% of Premium |
| After 20 years of seniority but less than 25 | 75% of Premium |
| After 15 years of seniority but less than 20 | 50% of Premium |
| Less than 15 years | No insurance coverage |

However, the Firefighters' CBA uses the phrase "life of the agreement" when discussing both active employees and retirees:

> For the life of this agreement, the health insurance coverage shall be the Blue Cross/Blue Shield PPO Plan with Riders APDBP PD500 . . . . In order to avoid duplicate coverage, employees will sign a disclaimer on the form provided before any premiums are paid by the City. Retirees shall continue to be eligible to receive the same health insurance as they have in the past except that future retirees (i.e.,. those employees retiring after July 1, 1988), shall have pre-determination added.

Plaintiffs also rely on a CBA between the City and the Police Officers Association of Michigan (POAM), which was effective for the term July 1, 2004 to June 30, 2007. Article XXVII of the POAM CBA specifically addresses the "duration of the agreement," stating:

ARTICLE XXVII
DURATION OF AGREEMENT

27.1: The provisions of this Agreement shall be effective as of July 1, 2004 and continue to remain in full force and effect to and including June 30, 2007, and thereafter for successive periods of on [sic] (1) year, unless either party shall at least ninety (90) days prior to July 1, 2007, service [sic] written notice on the other party of a desire to terminate, modify, alter, renegotiate, change, or amend this Agreement. A notice of desire to modify, alter, amend, renegotiate, or

change or any combination thereof, shall have the effect of terminating the entire Agreement on the expiration date in the same manner as a notice of desire to terminate unless before that date all subjects of amendment proposed by either party have been disposed of by agreement or by withdrawal, by the party proposing amendment.

The POAM CBA uses the phrase "for the duration of this Agreement" when discussing medical insurance coverage for active employees (§ 18.1) and also dental benefits for active employees (§ 18.4). The phrase "during the life of this Agreement" is used when discussing a "no-strike" clause (§ 26.1), as well as when discussing the collection of dues (§ 2.3).

Plaintiffs rely on the fact that the POAM CBA uses the phrase "for the life of this Agreement" when addressing retirees' benefits as follows:

18.8: For the life of this Agreement, employees retiring from the Police Department, including their spouse at the time of their retirement, in accordance with and under the terms of the City of Wayne retirement system, shall have their health insurance premiums paid for by the City in accordance with the following below. It is understood, that employee's [sic] who retire shall be limited to the health insurance coverage currently available under the union contract at the time of retirement.

| | |
|---|---|
| After 25 years of seniority | 100% of premium |
| After 20 years of seniority But less than 25 | 75% of premium |
| After 15 years of seniority But less than 20 | 50% of premium |
| Less than 15 years | no insurance coverage |

Provided, in the case of a duty disability retiree, the employee and their spouse will have one hundred percent (100%) of the health insurance premium paid by the City. In the event a person retires and engages in other employment where health insurance coverage comparable to that offered by the City is provided, the City's obligation to pay the premiums hereunder shall be suspended during the period of such other coverage. Further, a retiree must enroll and pay all applicable Medicare Part A & B coverage(s) when eligible.

For the life of this agreement Agreement [sic], the City shall provide a $8,000 life insurance policy for those employees who retire and draw retirement benefits under the City of Wayne Retirement Plan.

"For the life of this Agreement" is used when discussing pensions in § 19.1. Section 19.6 also specifically addresses limits on altering retirement plans and retiree healthcare for a period that extends beyond the original durational period of the POAM CBA:

19.6: In consideration for the foregoing changes in the retirement plan and the retiree health care for employees hired after October 15, 1984, the union

agrees that they shall not attempt to alter, add to or attempt to add to, through negotiation, interest arbitration, or judicial or administrative action, any provisions or practice relating to employee retirement for a period of ten (10) years through June 30, 2010. However, it is agreed that the Union may request any new retirement benefit that another City of Wayne bargaining group receives during the period of July 1, 2000 through June 30, 2010. (Retirement benefit shall mean those benefits that are paid from the City of Wayne Retirement System).

Plaintiffs' argument that the CBAs are patently ambiguous relies on the distinctions between "for the life of this agreement" and "for the duration of this agreement." However, it is apparent that both of these phrases, when read in context, are not at all ambiguous with regard to whether there was ever any agreement between the parties to allow for vesting of retiree healthcare benefits for the life of each retiree or beyond the period that each CBA was in effect. The plain meaning of those phrases indicates that they were used interchangeably and that no distinction was intended to establish vesting of retiree healthcare benefits. Neither of these phrases was used in any official or technical way; they were simply different ways of saying the same thing. Nothing in the parties' agreements suggests that these phrases had distinctive meanings. And, even if we consider the terms "life" and "duration" to be distinctive, both phrases clearly refer to "this agreement" only, meaning the CBA, not the life of a retiree.

Moreover, the POAM CBA specifically incorporated language that extended one part of the agreement beyond the durational period of that CBA. The POAM CBA ended in 2007, but § 19.6 extended a provision of the CBA to 2010. Accordingly, it is apparent that had the parties intended to extend any retiree healthcare benefits beyond the duration of each CBA, the parties were aware how to do that. The fact that they specifically clarified that the CBA was extended to 2010 in that instance shows that the general duration of that CBA was intended to apply to all other matters resolved by the CBA.

Plaintiffs have not identified any language in any of the applicable CBAs that shows that the City agreed to extend retiree healthcare benefits awarded under any CBA for a period beyond the duration of that CBA. Moreover, applying ordinary rules of contract interpretation, plaintiffs have failed to show that any terms of the CBAs between the City and its unions are ambiguous regarding whether the parties intended for the CBAs to allow retiree healthcare benefits awarded under those agreements to be subject to vesting or to extend beyond the life or duration of the individual CBAs. Therefore, the trial court did not err in concluding that no patent ambiguities existed.

IV. LATENT AMBIGUITIES

Alternatively, plaintiffs argue that the CBAs contain a latent ambiguity arising from the uses of the phrases "for the life of the agreement" and "for the duration of the agreement" with regard to vesting of healthcare benefits. Therefore, plaintiffs argue, the trial court should consider extrinsic evidence to determine if the CBAs were intended to provide for lifetime healthcare benefits for retirees. We disagree. In *Kendzierski*, 503 Mich at 316 (citation omitted), the Court stated that "since the CBAs are not ambiguous, the trial court should not have

-10-

considered extrinsic evidence because 'the parol evidence rule . . . prohibits the use of extrinsic evidence to interpret unambiguous language within a document.' "

Plaintiffs argue that a latent ambiguity exists regarding the right to extend healthcare benefits beyond the duration of each individual CBA. In *Kendzierski*, 503 Mich at 317, the Court explained that a

> "latent ambiguity . . . is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Shay*[ *v Aldrich*], 487 Mich [648,] 668[; 790 NW2d 629 (2010)] (quotation marks and citation omitted). In other words, "[a] latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Id*. (quotation marks and citations omitted; fourth alteration in original).

The Court rejected the suggestion that a governmental agency's statements regarding lifetime benefits in contradiction of a CBA could establish a latent ambiguity:

> Both defendant's counsel and plaintiffs' counsel acknowledged at oral argument before this Court that the Court of Appeals misused the term "latent ambiguity." The classic example of a latent ambiguity is found in *Raffles v Wichelhaus*, 2 Hurl & C 906; 159 Eng Rep 375 (1864), in which the parties contracted for a shipment "to arrive ex Peerless" from Bombay, but, unbeknownst to the parties, there were two ships named "Peerless" sailing from Bombay on that day, which created a latent ambiguity with regard to the ship to which the contract referred. Nothing similar occurred in the instant case. In other words, nothing outside the four corners of the CBAs calls into question the meaning of the language used within the four corners of the CBAs. Indeed, that a Macomb County Executive once stated that defendant "provides retiree health benefits to eligible County retirees (and their eligible beneficiaries) for their lifetimes" is not even inconsistent with our conclusion that the CBAs do not require defendant to provide benefits to eligible retirees (and beneficiaries) for their lifetimes. Defendant, of course, remains free to provide greater benefits to retirees (and beneficiaries) than those required under the CBAs. [*Kendzierski*, 503 Mich at 317 n 12.]

In support of their claim that a latent ambiguity exists in the CBAs related to retiree healthcare benefits, plaintiffs again rely on the "lifetime of the agreement" and "duration of the agreement" phrases in the CBAs. Plaintiffs appear to claim that even if these phrases are not ambiguous on their faces, it is apparent that the CBAs contemplated that retiree healthcare benefits would extend beyond the duration of each CBA under which the benefits were initially awarded. For instance, the CBAs required that retirees eligible for Medicare must enroll, apply, and pay all applicable Medicare Part A & B coverage(s) when eligible. In addition, healthcare coverage is suspended while a retiree engages in other employment where health insurance coverage is available to the retiree.

In *Kendzierski*, 503 Mich at 317-324, the Court explained that similar provisions in a CBA do not show a latent ambiguity simply because the circumstances of those provisions might exceed the duration of the CBA. Because the provisions that plaintiffs rely on involve matters that could occur within the duration of each individual CBA, these provisions do not support a finding of a latent ambiguity.

Plaintiffs argue that they should be permitted to offer extrinsic evidence to show the existence of a latent ambiguity in the CBAs. Plaintiffs are correct that extrinsic evidence can be offered for the limited purpose of determining the existence of a latent ambiguity. "Because 'the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist.' " *Shay*, 487 Mich at 668 (citation omitted).

> A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the " 'necessity for interpretation or a choice among two or more possible meanings.' " To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Id.*]

See also *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003).

Even though extrinsic evidence can be considered to determine the existence of a latent ambiguity, plaintiffs have not offered any evidence that the parties intended to award or extend retiree healthcare benefits beyond the duration of each CBA. "Parol evidence under the guise of a claimed latent ambiguity is not permissible to vary, add to[,] or contradict the plainly expressed terms of [a] writing or to substitute a different contract for it to show an intention or purpose not therein expressed." *Mich Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64 (1941) (citation and quotation marks omitted).

To support their claim that a latent ambiguity exists, plaintiffs were required to show that otherwise clear language is susceptible to more than one interpretation. *Shay*, 487 Mich at 668. In the case at bar, plaintiffs have not offered evidence to show that the phrases "lifetime of the agreement" and "duration of the agreement" are subject to an interpretation that would extend retiree healthcare benefits awarded under the CBAs to retirees for their lifetimes, beyond the lifetime or duration of the applicable CBAs. Extrinsic evidence cannot otherwise be used to contradict the clear language of an agreement. Plaintiffs' position that they understood that the City would pay retirees healthcare benefits for the duration of their lifetimes contradicts the express language in the parties' agreements, and plaintiffs did not offer extrinsic evidence showing that the language of the agreements was subject to different interpretations. Accordingly, the trial court did not err by ruling that plaintiffs failed to show a latent ambiguity regarding the duration of healthcare benefits awarded to retirees.

V. THE PAST PRACTICES DOCTRINE

Plaintiffs lastly argue that the City was not entitled to summary disposition because the parties' past practices included treating retiree healthcare benefits as lifetime benefits. The "past practices" doctrine is explained in *AFSCME Council 25*, 494 Mich at 81-82, as follows:

> In *Port Huron* [*Ed Ass'n v Port Huron Area Sch Dist*, 452 Mich 309; 550 NW2d 228 (1996)], the charging party also claimed that, notwithstanding a collective bargaining agreement that covered the matter in dispute, the parties' course of conduct created a *new* term or condition of employment that existed independently from the collective bargaining agreement. While this Court reviewed the parties' course-of-conduct claim separately from the collective bargaining agreement, we underscore that it is incumbent on courts and the MERC not to conflate an unfair labor practice complaint with an arbitrable disagreement over the terms of the collective bargaining agreement. Unambiguous language in a collective bargaining agreement dictates the parties' rights and obligations even in the face of a conflicting past practice, "unless the past practice is so widely acknowledged and mutually accepted that it creates an amendment to the contract." The party that seeks to overcome unambiguous contract language "must show the parties had a meeting of the minds with respect to the new terms or conditions so that there was an agreement to modify the contract."

> We clarify the *Port Huron* analysis to explain that this is an exceedingly high burden to meet. Any lesser standard would defeat the finality in collective bargaining agreements and would blur the line between statutory unfair labor practice claims and arbitrable disagreements over the interpretation of collective bargaining agreements. As a result, the party that seeks to overcome an unambiguous collective bargaining agreement must present evidence establishing the parties' affirmative intent to revise the collective bargaining agreement and establish new terms or conditions of employment. [Footnotes omitted.]

This Court has held that because retirees are not employees and are no longer subject to the labor-management relationship, a past practice may only be used to show amendment of a contract before an employee retires. *Butler*, 289 Mich App at 675-676. "[A] retiree relying on the past-practice doctrine must show that the past practice had modified the contract under which the retiree retired." *Id*. at 676.

> "Where the collective bargaining agreement is ambiguous or silent on the subject for which the past practice has developed, there need only be 'tacit agreement that the practice would continue.' " *Port Huron*, 452 Mich at 325, quoting *Amalgamated*, 437 Mich at 454-455. However, where a past practice is clearly contrary to clear contract language,

>> the unambiguous contract language controls unless the past practice is so widely acknowledged and mutually accepted that it amends the contract. The party seeking to supplant the contract language must show the parties had a meeting of the minds with respect to the new terms or conditions so that there was an

-13-

agreement to modify the contract. [*Port Huron*, 452 Mich at 312.]
[*Butler*, 289 Mich App at 676-677 (first alteration in original).]

In this case, the trial court held that the language in the CBAs was clear and unambiguous, and we agree with that conclusion. Therefore, plaintiffs were required to show that a past practice was so widely acknowledged and mutually accepted by the parties that there was a meeting of the minds with respect to an agreement to modify the CBAs to extend healthcare benefits to retirees for their lifetimes, beyond the life or duration of the applicable CBA. Plaintiffs did not meet that standard.

Plaintiffs offered the testimony of various retirees who understood that they were promised healthcare benefits for life upon retirement. Although the City honored that practice for years, it was never incorporated into the parties' employment agreements. The *understandings* of various individuals regarding healthcare coverage for retirees do not show any meeting of the minds with regard to whether retiree healthcare benefits were vested when an employee retired and could not be changed. Even if the City may have acknowledged over the years, through its financial statements, that it had a continuing burden of providing healthcare coverage to retirees and may have actually had a practice of providing coverage for retirees' lifetimes, there was no concession or *mutual agreement* that retiree healthcare benefits were not subject to future modifications. Notwithstanding the City's past practices with respect to retiree healthcare benefits, the CBAs unambiguously indicate that retiree healthcare benefits were only guaranteed for the lifetime or duration of each CBA. Plaintiffs have failed to show that the parties' past practice was to treat retiree healthcare benefits as vested obligations that could not be modified during each retiree's lifetime.

Accordingly, we affirm the trial court's order denying plaintiffs' motion for summary disposition and granting summary disposition in favor of the City, and the order dissolving the preliminary injunction in effect while this matter was pending, dismissing plaintiffs' complaint with prejudice, and denying as moot plaintiffs' motion to certify this matter as a class action.

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer

-14-