NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1429
_____

NITTERHOUSE CONCRETE PRODUCTS, INC;
NITTERHOUSE MASONRY PRODUCTS, LLC,

Appellants

v.

GLASS, MOLDERS, POTTERY, PLASTICS & ALLIED WORKERS
INTERNATIONAL UNION, AND  LOCAL UNION 201B, AFL-CIO CLC
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. No. 1-15-cv-02154)
District Judge:  The Honorable William W. Caldwell
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2018

Before:  SMITH, *Chief Judge*, McKEE and FISHER, *Circuit Judges*.

(Filed:  February 6, 2019)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Nitterhouse Concrete Products, Inc. and Nitterhouse Masonry Products, LLC (collectively, "Nitterhouse") appeal the District Court's summary judgment order dismissing their complaint against Glass, Molders, Pottery, Plastics & Allied Workers International Union, AFL-CIO, CLC, and its Local Union 201B (collectively, the "Union") for breach of contract, which concluded that the Union did not have a duty to indemnify Nitterhouse against withdrawal liability imposed after expiration of their collective-bargaining agreement (the "CBA"). We will affirm the District Court.

I.

Over the course of forty-four years, Nitterhouse and the Union entered into sixteen CBAs, the last one ending in February of 2014. Five days before the expiration of the final CBA, the Union provided Nitterhouse with "Disclaimer of Interest" letters informing Nitterhouse that the Union would not be renewing the CBA upon its expiration and would no longer represent the employees of Nitterhouse in its pension plan (the "Plan").

As a result, Nitterhouse withdrew from the Plan, claiming it had no other choice without the Union's representation of its employees. Pursuant to §4201 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1381, the Plan assessed a total $680,698 withdrawal liability against Nitterhouse. Nitterhouse commenced making payments to the Plan and demanded relief from the Union for the assessed withdrawal liability, invoking the CBA's indemnification clause, wherein the Union "agree[d] to indemnify and save harmless the Company from any claim or liability which may arise

2

by reason of the existence of the Plan." Nitterhouse Br. at 7. At the Union's refusal, Nitterhouse filed suit for breach of contract and demanded declaratory judgment.

## II.

The District Court had jurisdiction under federal labor law.[1] We have appellate jurisdiction to review the final order of the District Court.[2]

We exercise plenary review over the District Court's grant of summary judgment.[3]

## III.

The District Court was correct in finding that the indemnity provision did not extend to withdrawal liability incurred after expiration of the CBA.[4]

Courts interpret collective-bargaining agreements "according to ordinary principles of contract law,"[5] requiring consideration of "the traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'"[6] Therefore, the Union's contractual indemnity obligation expired at the time the CBA expired unless (A) the liability accrued during the contract

---

[1] *See* 29 U.S.C. § 185.
[2] *See id.* § 1291.
[3] *Am. Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574, 578 (3d Cir. 1995).
[4] The District Court also concluded that the language of the indemnity provision was broad enough to unambiguously encompass an obligation regarding withdrawal liability incurred before the expiration of the CBA. That question is not before us, and we reach no conclusion regarding that issue.
[5] *CNH Indus. N.V. v. Reese*, ___ U.S. ___, 138 S. Ct. 761, 763 (2018) (internal citations and quotations omitted).
[6] *M & G Polymers USA, LLC v. Tackett*, ___ U.S. ___, 135 S. Ct. 926, 937 (2015) (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991)).

period; (B) the parties intended the indemnification agreement to extend past the CBA's termination; or (C) a contractual exception exists.

A.

Nitterhouse's withdrawal liability did not accrue until after the CBA expired, which, pursuant to its express provisions, occurred at 12:00 midnight on February 15, 2014.[7] When an employer withdraws from an underfunded plan—one in which the assets do not satisfy the cost of vested liabilities—the employer must make a payment to the plan to cover its share of the unfunded liabilities.[8] Because an employer is only responsible for these costs after its plan membership ends, the employer must first effectively withdraw before liability is triggered.[9]

Here, Nitterhouse's obligation to contribute to the Plan arose from the CBA itself;[10] therefore, as long as the CBA controlled, the employer remained enrolled in the Plan and retained an obligation to make contributions. Before Nittterhouse could

---

[7] Though contract law permits parties to include "survival clauses" in contracts to extend the enforcement period of certain provisions beyond the contract's general expiration date, *id*., the CBA here contained no such express provision. It instead had a generic expiration clause that courts have interpreted to apply the durational limitation, "until this agreement ends," as a final phrase to every term in the CBA. *Litton*, 501 U.S. at 207; *see also Reese*, 138 S. Ct. at 766 (finding that the general durational clause unambiguously applied to an entire agreement because, if the parties intended for a separate durational limit to apply, "they easily could have said so in the text. But they did not.").
[8] 29 U.S.C. §1391; *see also Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416-17 (1995) (explaining withdrawal liability).
[9] 29 U.S.C. §1381(a).
[10] *Id.* §1392(a).

4

"permanently cease[ ] to have an obligation to contribute under the plan,"[11] termination

of the CBA had to be fully effectuated.  Like a chain of dominoes, withdrawal liability

could only be imposed if Nitterhouse no longer had an obligation to contribute to the

Plan; Nitterhouse's contribution obligation could only cease if the CBA terminated; and

the CBA terminated only if it was not renewed by the expiration deadline.[12]  These events

did not occur in unison, but in succession, with the accrual of liability following the

CBA's expiration.[13]

B.

Even absent express language extending the indemnification clause to withdrawal

liability, the Union may still owe Nitterhouse indemnification if extrinsic evidence

---

[11] *Id.* §1383(a).

[12] Nitterhouse argues that the liability accrued simultaneously with the expiration of the CBA and, therefore, the withdrawal liability was covered by the CBA's indemnification clause.  *See* Nitterhouse Br. at 30. However, this assertion strains logic; by the very nature of withdrawal liability, it could not have accrued until after, even if by a mere nano-second, Nitterhouse withdrew from the Plan, which itself was conditioned upon the CBA's termination.

[13] Nitterhouse argues that, even if the liability was assessed after the expiration of the CBA, the indemnification provision still attaches because the amount of the liability was fixed during the previous calendar year and related to benefits provided while the CBA controlled. *See* Nitterhouse Br. at 42 n.7.  However, as explained, it is the withdrawal that triggers an obligation to pay, not the accumulation of costs over time, which accounts only for the amount of the liability.  *See Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 307, 310-13 (5th Cir. 1988) (finding that "[t]he argument that withdrawal liability is merely a method of imposing an already determined unfunded vested liability is conceptually faulty and unsupported by the case law" and holding that withdrawal liability does not exist until an employer withdraws from a Plan).

5

demonstrates that the durational limit of the indemnification clause is ambiguous,[14] as Nitterhouse argues it is.

In 2013, when negotiating the parties' final CBA, Nitterhouse drafted and proposed an amendment to the indemnification provision that had controlled since 1976. In this amendment, Nitterhouse sought to add a requirement that "[t]he rights to receive benefits under the Pension Plan and the associated responsibilities of the Union as described in the provisions of ARTICLE XVII shall not be affected by the termination of this agreement." Union Br. at 4. The Union rejected this amendment, stating that "the indemnification provision 'is clearly without any effect or enforceability after termination or expiration of the collective bargaining agreement.'" *Id.* at 5.

The District Court examined this extrinsic evidence to find that the indemnification clause was not ambiguous regarding when it would expire. Therefore, we need not go beyond the four corners of the CBA to determine the parties' intentions or conclude that the indemnification provision expired at the same time as the CBA.

## C.

Because the liability was incurred after the CBA expired and absent the parties' intent for the indemnification agreement to persist, the general and unambiguous end-of-

---

[14] *See UAW v. Skinner Engine Co.*, 188 F.3d 130, 142 (3d Cir. 1999) (emphasizing that "[t]o determine whether a contract is ambiguous, a court may not merely consider whether the language is clear from its point of view," but should refer to "the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation").

6

contract durational limit can only be extended if indemnification obligations are of the type that courts presume to survive the expiration of a contract.

Nitterhouse attempts to draw a parallel between indemnification agreements and arbitration clauses. When considering whether arbitration clauses survive termination, courts assume that certain types of rights are "'accrued or vested' without any other evidence in a contract."[15] Arbitration clauses often survive contract termination because the underlying dispute—which a party is wishing to resolve through arbitration—concerns rights that accrue over time and during the contract term (*e.g.*, severance pay). Therefore, courts reason that resolution should be pursued in accordance with the arbitration clause in the relevant contract.[16] Those factors do not parallel the circumstances here. Nitterhouse's withdrawal liability did not accrue over time while the CBA controlled, but was assessed only after the contract expired. Thus, the indemnification agreement here is not of the nature of provisions that *de facto* survive expiration.

## IV.

The District Court did not err in granting summary judgment in favor of the Union. We will therefore affirm.

---

[15] *Cincinnati Typographical Union No. 3 v. Gannett Satellite Info. Network, Inc.*, 17 F. 3d 906, 911 (6th Cir. 1994).
[16] *Id.*