NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0569n.06

No. 18-5384

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JUDITH KERNS, et al.,

    Plaintiffs-Appellees,

v.

CATERPILLAR INC.,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

FILED
Nov 13, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

Before: BOGGS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. This twelve-year-old class action is the latest case in a series of disputes over the vesting of lifetime benefits in collective-bargaining agreements. The plaintiffs here—surviving spouses of employees who retired under a collective-bargaining agreement—sued to obtain free healthcare benefits for life, which they say were promised under the agreement. The district court granted partial summary judgment for the plaintiffs, holding that they were entitled to those benefits. The defendant, Caterpillar, Inc., now appeals that decision, arguing (among other things) that the agreement's language prevented any benefits from vesting. We affirm in part and reverse in part.

I.

In 1998, Caterpillar, a construction-equipment manufacturer, entered into a new collective-bargaining agreement with its workforce, which was represented by United Auto Workers. That agreement included an "Insurance Plan Agreement," to which the parties attached a "Group Insurance Plan." The Plan in turn defined the employees' healthcare and retirement benefits.

Section 5 of the Plan stated that, "following the death of a retired Employee," the company would continue to provide healthcare coverage "for the remainder of his surviving spouse's life without cost." Plan § 5.15. But the Plan also stated that "[b]enefits in accordance with this Section will be provided . . . for the duration of any Agreement to which this Plan is a part." Plan § 5.1.

Caterpillar and the UAW removed that "life without cost" language when they entered into a new collective-bargaining agreement in January 2005. Accordingly, Caterpillar notified the spouses of deceased employees that the company would soon be deducting healthcare premiums from their monthly pension payments. After some of those spouses objected to that change, the company agreed in writing not to charge those premiums to spouses of employees who died before the 2005 agreement took effect—or "actual surviving spouses," as Caterpillar sometimes calls them here.

This litigation began in 2006. The plaintiffs are surviving spouses of employees who worked for Caterpillar, retired while the 1998 Plan Agreement and Plan were in effect, and have since died. Some of those employees died before the 1998 Plan Agreement terminated in 2005; some died afterward. All the plaintiffs sought injunctive and declaratory relief to the effect that, under the 1998 Agreement and Plan, they have a "vested" entitlement—meaning an entitlement that continues after the expiration of the agreement that gives rise to it—to free healthcare benefits for life.

The district court thereafter certified a single class that included spouses of Caterpillar employees who died while the 1998 Plan Agreement and Plan were in effect, and spouses of employees who died afterward. In 2010 the district court granted partial summary judgment for the plaintiffs, relying in large part on our *Yard-Man* decision. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (1983).

Since then, however, the Supreme Court has emphatically rejected the rule of *Yard-Man*, which the Court said "plac[es] a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 935 (2015). Three years later the Court again reversed us in a case where the Court heard echoes of *Yard-Man* in our opinion. *See CNH Indus. N.V. v. Reese*, 138 S. Ct. 761 (2018).

Those decisions prompted Caterpillar to file several motions for reconsideration, which the district court denied. Finally, in March 2018, the district court entered a final judgment. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016).

## A.

Caterpillar makes two preliminary arguments. First, Caterpillar argues that the claims of "actual surviving spouses"—meaning again spouses of employees who both retired (or were eligible for retirement) and died while the 1998 Plan Agreement and Plan remained in effect—are moot because Caterpillar has not charged them premiums for the past 13 years and because "[t]here is no evidence" that Caterpillar plans to charge them premiums in the future. Caterpillar Br. at 40. But we determine mootness on a class-wide basis. *See Unan v. Lyon*, 853 F.3d 279, 285 (6th Cir. 2017). And many if not most members of the class—notably, the spouses of employees who retired while the 1998 Plan was in effect but died afterward—undisputedly have live claims. Caterpillar's mootness argument is therefore meritless.

That said, Caterpillar has abandoned any challenge to the district court's judgment to the extent the judgment provides relief to actual surviving spouses. Specifically, Caterpillar now says

that the claims of these spouses "have been resolved"; that their "rights have already been determined"; and that the only issue "remaining" for this court "is whether post-expiration spouses"—by which Caterpillar apparently means spouses of employees who retired while the 1998 Plan Agreement and Plan were in effect, but who died afterward—"are covered by the 1998 Contract." Caterpillar Reply Br. at 22–23. "The province of the court is, solely, to decide on the rights of individuals[.]" *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803). That Caterpillar itself—the appellant in this case—says the claims, which is to say the rights, of actual surviving spouses are "resolved" and "already determined," and that those claims are not among the issues "remaining" on appeal, leaves us with nothing to do as to those claims. Our decision in this appeal therefore does not affect the district court's adjudication of them.

Second, Caterpillar argues that the claims of the remaining plaintiffs (whom we refer to simply as "plaintiffs" or "post-termination spouses" from here) are time-barred. Caterpillar bears the burden of showing that the statute of limitations—here, six years—has run. *See Campbell v. Grand Trunk W. R.R.*, 238 F.3d 772, 775 (6th Cir. 2001). To trigger the statute of limitations, Caterpillar's refusal to pay the plaintiffs' benefits must have been "clear and unequivocal." *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408–09 (6th Cir. 2010). The plaintiffs brought this suit in April 2006; thus, for the plaintiffs' claims to be time-barred, Caterpillar must have unequivocally put the plaintiffs on notice no later than April 2000 that it would not pay the benefits at issue here. Suffice it to say that Caterpillar has not remotely made that showing. To the contrary, one of the documents that Caterpillar cites as providing notice itself recites that surviving spouses "will have coverage continued for his or her lifetime without cost." R. 223-1 at Page ID 6989. We therefore turn to the merits.

B.

Caterpillar argues that the 1998 Plan did not provide the plaintiffs with a vested entitlement to lifetime healthcare benefits without cost. We resolve that issue "according to 'ordinary principles of contract law.'" *Reese*, 138 S. Ct. at 763 (quoting *Tackett*, 135 S. Ct. at 933). One of those principles—sometimes overlooked under the *Yard-Man* approach, which the district court was bound to follow in its 2010 ruling—is that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Tackett*, 135 S. Ct. at 937.

Collective-bargaining agreements typically contain a "general durational" provision that states when the agreement ends. *See, e.g.*, *Cooper v. Honeywell Int'l, Inc.*, 884 F.3d 612, 616 (6th Cir. 2018). Discrete parts of the agreement may also have their own "specific" durational provision. *See Gallo v. Moen*, 813 F.3d 265, 271–73 (6th Cir. 2016). Moreover, unless an agreement says otherwise, promises subject to a durational provision do not vest—because contractual obligations end when the agreement ends. *See Tackett*, 135 S. Ct. at 937.

Here, the 1998 agreements included not only a general-durational provision for the Plan Agreement, but also a specific-durational provision for healthcare benefits under the Plan. The general-durational provision appears in § 9(a) of the Plan Agreement, which provides that "this Agreement shall remain in force until April 1, 2004" and that the Agreement may remain in force thereafter depending on certain actions or inaction of the parties. The durational provision specific to healthcare benefits appears in § 5.1 of the Plan, which provides that "[b]enefits in accordance with this Section"—which is the very section under which the plaintiffs claim benefits here—"will be provided to such Employee, retired Employee, and Dependents thereof for the duration of any Agreement to which this Plan is a part." We recently interpreted nearly identical language—"for the duration of this Agreement"—in a nearly identical context to mean that the employer had

promised to provide healthcare benefits only "for as long as the agreement lasts[.]" *Watkins v. Honeywell Int'l Inc.*, 875 F.3d 321, 325 (6th Cir. 2017). We interpret the durational language in § 5.1 the same way here, which means that Caterpillar's obligation to provide healthcare benefits under § 5 of the Plan terminated when the Plan Agreement did. *Id.*; *see also Tackett*, 135 S. Ct. at 937. And the Plan Agreement terminated no later than January 10, 2005, which was the effective date of a different agreement in which Caterpillar and the UAW struck a different deal as to healthcare benefits. Hence the plaintiffs cannot claim any entitlement under § 5 of the 1998 Plan now.

The plaintiffs respond, understandably, that § 5.15 of the Plan promised that, "following the death of a retired employee," Caterpillar would provide the employee's spouse with healthcare benefits "for the remainder of [her] life without cost." Thus, the plaintiffs contend, the description of the benefit itself (specifically the use of the word "life") amounts to a separate durational provision, which is specific to the benefit at issue here and thus trumps the more general durational language in § 5.1. But our court rejected a materially identical argument in *Cooper*, where the parties' agreement promised to provide healthcare to retirees "until age 65[.]" 884 F.3d at 620. That promise, we held, expired when the agreement expired; for that benefit to have vested, rather, the agreement would have needed to "say something more—for example, 'retirees will continue to be covered under the plan until age 65, regardless of whether this CBA expires before they reach that age[.]'" *Id.* (emphasis omitted). And in another case—involving an agreement providing lifetime benefits to retiree spouses—we reasoned that, "if a retiree died after the last CBA expired, then Honeywell's promise has expired, and Honeywell is not obligated to provide the surviving spouse with lifetime healthcare benefits." *Fletcher v. Honeywell Int'l, Inc.*, 892 F.3d 217, 227 (6th Cir. 2018); *see also Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 483 (7th Cir. 2006) ("It is well

established that 'lifetime' benefits can be limited to the duration of a contract"). Thus, under our precedents, Caterpillar is not obligated to provide lifetime healthcare benefits without cost to spouses of retirees who died after the Plan Agreement expired.

Finally, the plaintiffs invoke other language in the Plan Agreement's general-durational provision (*i.e.*, § 9(a)), to wit: "Termination of this Agreement shall not have the effect of automatically terminating the Plan." But again the more specific durational provision in § 5 of the Plan itself, construed as we construed materially identical language in *Watkins*, promised benefits under § 5 for only "as long as the agreement lasts[.]" 875 F.3d at 325. That same language in § 5—"for the duration of *any* Agreement to which *this* Plan is a part" (emphasis added)—indicates that the parties could have extended the duration of benefits under that section by attaching the Plan to another agreement. And in that case the termination of the prior Agreement would not have "automatically terminat[ed]" the Plan. But the parties in fact chose not to attach the Plan to another agreement—instead they agreed upon a different plan—which means that Caterpillar's obligation to provide benefits under § 5 to post-termination spouses terminated when the Plan Agreement did. *See Tackett*, 135 S. Ct. at 937.

*   *   *

The district court's judgment is affirmed as to surviving spouses of retirees who both retired (or were eligible to retire) and died while the 1998 Plan Agreement remained in effect; the court's judgment is reversed as to surviving spouses of retirees who died after the 1998 Plan terminated; and the case is remanded for proceedings consistent with this opinion.