**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3374
_____

NEIL BLANKENSHIP; MICHAEL TURNER; RHONDA TURNER; MIRIJANA
BERAM; DARRELL HUTSON; ROBYN JOHNSON; G. CRAIG BRADFORD,
individually and as Trustee Ad Litem; UNITED GAS WORKERS UNION, LOCAL 69,
UTILITY WORKERS UNION OF AMERICA, AFL-CIO, an Unincorporated
Association,
Appellants

v.

DOMINION ENERGY TRANSMISSION, INC., formerly Dominion Transmission Inc, a
Corporation; DOMINION ENERGY WEST VIRGINIA, INC., formerly Hope Gas Inc, a
Corporation; DOMINION ENERGY, INC., a Corporation; DOMINION ENERGY
SERVICES, INC., a Corporation
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-18-cv-01208)
District Judge: Honorable William S. Stickman, IV
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
June 19, 2020

Before: SMITH, *Chief Judge*, CHAGARES and PORTER, *Circuit Judges*.

(Filed: June 19, 2020)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PORTER, *Circuit Judge*.

Several retired employees of Dominion Energy Transmission, Inc. ("Dominion")[1] sued their former employer alleging that unilateral changes it made to their post-retirement medical benefits violated the Employee Retirement Income Security Act ("ERISA"). They alleged that an expired collective bargaining agreement and its associated medical benefits plan entitled them to unalterable, lifetime healthcare benefits. Because the retired employees failed to state a claim and amendment would be futile, we will affirm the District Court's order dismissing the complaint and denying leave to amend.

**I**

Neil Blankenship, Michael Turner, Mirijana Beram, Darrell Hutson, and Robyn Johnson[2] ("Retirees") retired from Dominion. While working at Dominion, Retirees were members of the United Gas Workers Union, Local 69, Utility Workers Union of America, AFL-CIO ("Union"). The Union and Dominion negotiated a collective bargaining agreement ("CBA") governing Retirees' employment.[3]

---

[1] The other corporate parties include: Dominion Energy West Virginia, Inc., Dominion Energy, Inc., and Dominion Energy Services, Inc. All corporate entities are referred to collectively as "Dominion."

[2] Michael Turner's spouse, Rhonda Turner, and the Union's representative, G. Craig Bradford, are also Appellants. We refer to all individual Appellants collectively as "Retirees."

[3] Different CBAs governed Retirees' employment, but the parties agree that the CBAs contained identical language except for the year included in the termination date. *See* App. 7A. Thus, we will cite only one CBA.

The CBA noted that Dominion could not make "changes affecting [medical] benefits" without coming to an agreement with the Union. App. 67A. The CBA also included a general durational clause, which stated that the CBA would terminate on "11:59 A.M., April 1, 2016[.]" App. 68A.

Under the CBA, the welfare benefits of Dominion's retired employees were "governed solely by the provisions" of each specific benefit plan. App. 67A. Medical benefits were governed by the Medical Plan Summary Plan Description and the Additional Information Summary Plan Description (collectively the "Medical Plan").

Under the Medical Plan, Dominion "reserve[d] the right to make changes to [medical] benefits after [an employee's] retirement." App. 203A. This included "the right to alter, amend, or terminate any of the Benefit Plans at any future date." App. 214A. But Dominion could alter, amend, or terminate the Medical Plan "only after obtaining consent by the Union to such changes[.]" *Id.*

After the CBA expired, Dominion and the Union began negotiating a new collective bargaining agreement. During negotiations, Dominion proposed "to eliminate" certain medical benefits for retirees. App. 33A. The Union did not consent to the change. Nevertheless, Dominion "unilaterally altered the terms of the medical plan," which affected Retirees' substantive health benefits. App. 34A.

In response, Retirees filed a complaint in the District Court alleging that Dominion violated ERISA, 29 U.S.C. § 1132 *et seq.* Particularly, Retirees alleged that they were

"wrongfully denied [medical] benefits . . . by the alterations made by" Dominion. App. 35A. Dominion moved to dismiss, and the District Court, after a careful analysis of the contracts, dismissed Retirees' complaint for failure to state a claim. Retirees timely appealed.

## II[4]

A collective bargaining agreement can "define rights to welfare benefits plans." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434 (2015). If a collective bargaining agreement creates a welfare benefits plan, it is "subject to rules established" by ERISA. *Id.* ERISA defines welfare benefits plans "as plans, funds, or programs established or maintained to provide participants with additional benefits" such as plans providing medical insurance coverage. *Id.* (citing 29 U.S.C. § 1002(1)). An employer is "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans[.]" *Id.* at 434–35 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)).

---

[4] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review de novo the grant of a motion to dismiss. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016). When reviewing a motion to dismiss, we accept as true the complaint's well-pleaded factual allegations, view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. *Id.* We can consider the CBA and the Medical Plan at the motion-to-dismiss stage because they were attached to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation and emphasis omitted).

A collective bargaining agreement that intends to create a fixed, lifetime right to health insurance benefits—in other words, one that "vest[s]" welfare benefits to its employees—must do so "in clear and express language." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Skinner Engine Co.*, 188 F.3d 130, 139 (3d Cir. 1999) (citation omitted). The requirement for clear and express language "is especially appropriate when enforcing an ERISA [welfare benefits] plan." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013). We thus have "a presumption against vesting" welfare benefits. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 196 (3d Cir. 2002) (citation omitted).

To determine whether a collective bargaining agreement clearly and expressly vests plan participants with health insurance benefits, we interpret it "according to ordinary principles of contract law." *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018) (quoting *Tackett*, 574 U.S. at 435); *see United States v. Seckinger*, 397 U.S. 203, 209–10 (1970) (when federal law governs the interpretation of a contract, the court is guided by general principles of contract interpretation).

Under ordinary principles of contract interpretation, "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Tackett*, 574 U.S. at 441–42 (citation omitted). This general rule may be overcome by an explicit contract term providing "that certain benefits continue after the agreement's expiration." *Id.* at 442 (citation omitted). And we ordinarily read collective bargaining agreements and

their related plans "as a harmonious whole." *Cf. Engelhard Corp. v. NLRB*, 437 F.3d 374, 381 (3d Cir. 2006) (citation omitted); *see also* 11 Richard A. Lord & Samuel Williston, *Williston on Contracts* § 32:5 (4th ed. 1993).

Based on ordinary contract interpretation principles, we conclude that neither the CBA nor the Medical Plan provided Retirees with a right to unalterable, lifetime medical benefits. First, the CBA does not contain a provision clearly and expressly vesting retirees with medical benefits.

Second, the Medical Plan does not contain a provision clearly and expressly vesting retirees with medical benefits. According to Retirees, we can infer that the rights are vested because: (1) the Medical Plan requires Dominion to receive Union consent before changing medical benefits and (2) the Medical Plan does not contain a general durational clause. Retirees contend that, "[b]y intentionally not including a termination date in the [Medical Plan] while intentionally including a termination date in the CBA, the parties clearly expressed their intent" to vest "post-retirement medical benefits." Appellants' Br. 20–21.

This argument fails. First, the *absence* of a termination clause combined with the consent clause does not clearly and expressly vest Retirees with lifetime medical benefits. Rather, we would have to infer that the parties intended to vest Retirees with medical benefits. But our "presumption against vesting" welfare benefits and the requirement for clear and express language prohibit such an inference. *See Smathers*, 298 F.3d at 196; *see*

6

*also Skinner*, 188 F.3d at 139.[5] Moreover, a contract that is silent in duration does not operate "in perpetuity." *Reese*, 138 S. Ct. at 764 (citation omitted).

What's more, the Medical Plan's coverage terminated with the CBA. The CBA explained that the Medical Plan was "governed solely by" the Medical Plan's provisions. *See* App. 67A. The Medical Plan, in turn, stated that it was "maintained through [the CBA]." App. 212A. By its clear terms, the CBA "cause[d]" the Medical Plan "to continue in being." *See Maintain*, Oxford English Dictionary https://www.oed.com/view/Entry/112562 (last visited Apr. 30, 2020). In other words, the Medical Plan derived its existence from the CBA.[6] Thus, when the CBA expired, the Medical Plan also expired. *See Tackett*, 574 U.S. at 441–42 ("[C]ontractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." (citation omitted)); *see also* 20 *Williston* § 55:27.

Third, other welfare benefits plans between Dominion and the Union, which are addressed in the Additional Information portion of the Medical Plan, included vesting clauses. For example, the Savings Plan and Pension Plan both state that, in the case of

---

[5] Retirees argue that "it is simply not possible to look" at the CBA and Medical Plan "and conclude that there is an unambiguous intention *not* to extend vested medical benefits to retired individuals." Appellants' Br. 22 (emphasis added). But this flips the standard on its head; the clear and express language of the CBA and Medical Plan must show an intention *to vest* medical benefits to retirees.

[6] Retirees' entire complaint tacitly concedes this point. ERISA applies to Retirees' claims *only if* the CBA created the rights contained in the Medical Plan. *See Tackett*, 574 U.S. at 434 ("When collective-bargaining agreements *create* pension or welfare benefits plans, those plans are subject to rules established in ERISA." (emphasis added)).

7

"complete or partial termination" of the respective plan, "affected participants will have a vested and non-forfeitable right" to the benefits secured by those plans. App. 214A. This shows that when Dominion and the Union intended to vest rights, they knew how to do so. The absence of similar language in the Medical Plan reveals the parties' intent *not* to vest medical benefits. *See Reese*, 138 S. Ct. at 766 ("If the parties meant to vest health care benefits for life, they easily could have said so in the text. But they did not.").

### III[7]

Retirees also assert that the District Court abused its discretion by not granting them leave to amend their complaint. Retirees hoped to amend their complaint to allege facts related to the parties' bargaining history. They contend that the "negotiation history is relevant to construing" the CBA's and the Medical Plan's language. Appellants' Br. 9.

The District Court did not abuse its discretion by denying leave to amend because amendment would have been futile. First, we need not consult extrinsic evidence to interpret unambiguous contracts. *See Tackett*, 574 U.S. at 443 (Ginsburg, J., concurring) (citing *Williston*, § 30:6). Second, the "assessment of likely behavior in collective bargaining is too speculative and too far removed from the context of any particular contract to be useful in discerning the parties' intention." *Id.* at 438–39.

\*     \*     \*

---

[7] We review the denial of leave to amend for an abuse of discretion. *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 112 (3d Cir. 2019).

For these reasons, we will affirm the District Court's order dismissing Retirees' complaint and denying them leave to amend.