PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1249
_____

PITTSBURGH MAILERS UNION LOCAL 22, a
Subordinate Union of the Communication Workers of
America AFL-CIO; PITTSBURGH TYPOGRAPHICAL
UNION NO. 7, a Subordinate Union of the Communication
Workers of America  AFL-CIO;
PRESSMEN/PAPERHANDLER LOCAL UNION 24M/9N,
a Subordinate Union of the Graphic Communication
Conference/International Brotherhood of Teamsters
(GCC/IBT); THE NEWSPAPER, NEWSPRINT,
MAGAZINE AND FILM DELIVERY DRIVERS,
HELPERS, AND HANDLERS, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL NO. 211,

Appellants

v.

PG PUBLISHING CO. INC., d/b/a Pittsburgh Post Gazette

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-20-cv-00222)
District Judge: Honorable J. Nicholas Ranjan

Argued on September 24, 2021

Before: McKEE, RESTREPO, and ROTH, Circuit Judges

(Opinion filed: March 30, 2022)

Patrick K. Lemon                    **(ARGUED)**
Joseph J. Pass
JUBELIRER, PASS & INTRIERI
219 Fort Pitt Boulevard
1st Floor
Pittsburgh, PA 15222

       Counsel for Appellants

Brian M. Hentosz                    **(ARGUED)**
Terrence H. Murphy
LITTLER MENDELSON
625 Liberty Avenue
EQT Plaza, 26th Floor
Pittsburgh, PA 15222

       Counsel for Appellee

---

OPINION OF THE COURT

---

ROTH, *Circuit Judge*:

In this appeal we are asked to determine whether an arbitration provision in a collective bargaining agreement (CBA) survives the expiration of the CBA and remains effective for an extended period during which the parties are attempting to negotiate a new CBA.

Pittsburgh Mailers Union Local 22, Pittsburgh Typographical Union No. 7, and Pressman/Paperhandler Local Union 29M/9N exclusively represent certain employees of PG Publishing, which prints the Pittsburgh Post-Gazette. Each union had its own CBA with PG Publishing. Among other provisions, the CBAs required PG Publishing to provide health insurance to the unions' employees.

In addition, a separate provision in each CBA governed dispute resolution. When a dispute arose under the CBAs, those agreements contemplated a particular grievance procedure. The final step in that grievance procedure involved the union and PG Publishing participating in binding arbitration. The CBAs had durational clauses, but the arbitration provisions had no durational clauses of their own.

All three CBAs expired in March 2017. Two months before their expiration, PG Publishing sent letters to the unions. In all the letters, PG Publishing included these statements:

The current Agreement expires on March 31, 2017. At that time, all contractual obligations of the current agreement shall expire.

[PG Publishing] will continue to observe all established wages, hours and terms and conditions of employment as required by law, except those recognized by law as strictly contractual, after the Agreement expires. With respect to arbitration, the Company will decide its obligation to arbitrate grievances on a case-by-case basis.[1]

While the parties continued to negotiate new CBAs, they operated under certain terms of the now-expired agreements. The unions claim that, during that negotiation period in 2019, PG Publishing violated the expired CBAs by failing to provide certain health-insurance benefits. The unions filed grievances under the dispute-resolution provisions contained in the now-expired agreements. PG Publishing refused to arbitrate these grievances. Instead, PG Publishing sent letters to the unions saying that it "has expressly disavowed any obligation to arbitrate post-expiration grievances."[2] In these letters, PG Publishing noted the Supreme Court's decision in *Litton Financial Printing Division v. NLRB*,[3] explaining that:

---

[1] S. App. 38–39, 42, 44, 46, 65, 68, 70.
[2] App. 191, 196–99.
[3] 501 U.S. 190 (1991)

4

Having carefully considered the circumstances of this grievance, [PG Publishing] has concluded that the grievance does not fall within any of *Litton*'s exceptions. The grievance involves facts and occurrences that arose after the contract expired. Under normal principles of contract interpretation, the disputed contract right does not survive the expiration of the contract. Therefore, the Union's grievance is not arbitrable.[4]

The unions filed this lawsuit in February 2020. They asserted that, under our decision in *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionery & Tobacco Workers International Union*,[5] implied-in-fact contracts had been formed and, therefore, the unions and PG Publishing needed to follow the arbitration provisions included in the now-expired CBAs.[6] After discovery, the unions and PG Publishing moved for summary judgment. The District Court granted PG Publishing's motion for summary judgment, holding that the court could not compel PG Publishing to arbitrate.[7] The unions appealed.

---

[4] App. 191, 196–99.

[5] 28 F.3d 347 (3d Cir. 1994).

[6] App. 14.

[7] The District Judge based his decision on his finding that no clear implied-in-fact contract to arbitrate existed after the expiration of the CBA. However, he added in a note a request to our Court to provide clarification on whether and under what circumstances an arbitration provision survived the expiration

## I.

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331.  We have appellate jurisdiction under 28 U.S.C. § 1291.  We apply plenary review to a district court's order granting summary judgment.[8]  Summary judgment may be granted only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.[9]

## II.

In *Luden's*, we held that "an arbitration clause may survive the expiration or termination of a CBA intact as a term of a new implied-in-fact CBA  unless (i) both parties in fact intend the term not to survive, or (ii) under the totality of the circumstances either party to the lapsed CBA objectively manifests to the other a particularized intent, be it expressed verbally or non-verbally, to disavow or repudiate that term."[10]

---

of a CBA.  He added that clarification would be helpful not only to the courts but also to "employers and unions in how best to act after expiration of a CBA." *Pittsburgh Mailers Union Local 22, et al. v. PG Publishing Co.*, No. 2:20-cv-222-NR, 2021 WL 244632 at 3\* (W.D. Pa. Jan. 5, 2021).

[8] *See, e.g.*, *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).

[9] *See* Fed. R. Civ. P. 56(c); *see also Coolspring Stone Supply, Inc. v. Am. States Life Ins., Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

[10] *Luden's*, 28 F.3d at 364.

6

Although then-Judge Samuel Alito saw conflict with *Litton* in this holding, the *Luden's* Majority (of which I was one) did not.

The decision of the *Luden's* Majority does not, however, hold up under further rulings by the Supreme Court on the issue of the survival of the contractual provisions of a CBA after its expiration. In 2015, in *M & G Polymers USA, LLC v. Tackett*,[11] the Supreme Court was called upon to determine whether retiree health benefits, created in expired CBAs, had terminated at the time that the CBAs expired. The retirees were seeking vested contribution-free lifetime benefits. The Court held that it interpreted CBAs "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy."[12] The Sixth Circuit Court of Appeals had held that the provisions of the CBA "inferred an intent to vest those retiree benefits for life."[13] The Supreme Court concluded, to the contrary, that the benefits in question did not survive the expiration of the CBA. The Court turned to *Williston on Contracts* to support its ruling: "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent."[14] The Court then ruled against the retirees, holding that the inferences of lifetime benefits were "inconsistent with ordinary principles of contract law."[15]

---

[11] 574 U.S. 427 (2015).

[12] *Id.* at 435.

[13] *Id.* at 436.

[14] 11 R. Lord, *Williston on Contracts* § 30:6, p. 108 (4th ed. 2012).

[15] *Tackett* at 574 U.S. at 442.

Three years later, in *CNH Industrial N.V. v. Reese*,[16] the Sixth Circuit Court of Appeals tried again to hold that lifetime vesting of health care benefits survived the expiration of the CBA that had created them. Here, the Court of Appeals had held that the same inferences that had been used to support vesting, now rendered the provisions of the CBA ambiguous so that the court could consider extrinsic evidence. The Supreme Court flatly held that the Court of Appeals' decision "does not comply with *Tackett*'s direction to apply ordinary contract principles."[17] The Supreme Court explained that those principles include the requirement that, if a specific provision does not have its own durational clause, the general durational clause of the CBA applies.[18] For that reason, in *Reese*, the Court of Appeals' refusal to apply the general durational clause "distort[ed] the text of the agreement and conflict[ed] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties."[19]

Arbitration provisions are similar to these health benefit provisions in that they are matters of consent, *i.e.*, unlike wages, hours and terms and conditions of employment, arbitration provisions are contractual provisions that are not required by the NLRA to continue in effect during the negotiation of a new CBA.[20] The holdings of the Supreme Court in *Tackett* and *Reese* are, for this reason, relevant to our consideration of the duration of the arbitration provisions in the CBAs here. It is clear from these Supreme Court precedents

---

[16] 138 S. Ct. 761 (2018).

[17] *Id.* at 765.

[18] *Id.* at 763.

[19] *Id.*

[20] *Litton*, 501 U.S. at 198-200.

8

that we must apply ordinary contract principles in determining whether a contractual provision in a CBA survives the expiration of the CBA. According to these principles, if a specific provision does not have its own durational clause, the general durational clause of the CBA applies.[21]

The arbitration provisions here are contractual. Thus, we must follow the Supreme Court's directive: Since the arbitration provisions have no durational limit of their own, their survival is governed by the general durational clauses of the CBAs. Under this rule, PG Publishing's obligation to arbitrate expired with the CBAs in March 2017.

Nor does the unions' claim of an "implied-in-fact contract" change our ruling. The arbitration clause had already expired. The rule does not preclude the parties from coming to an agreement, after the expiration of a CBA, to arbitrate disputes in accord with contract law principles. However, such an agreement must be a complete one, encompassing all necessary provisions. It cannot be merely "implied."

The letters, written by PG Publishing in 2017, confirm that PG Publishing did not wish to be bound by the arbitration provisions after the expiration of the CBAs. PG Publishing's letters, however, were not necessary to reach the conclusion that we do. Because the arbitration provisions here did not have their own durational clauses, under the contract law principle that the writing must encompass the whole agreement of the parties,[22] PG Publishing's letters were not necessary.

---

[21] *Reese*, 138 S. Ct. at 766 (quoting *Litton*, 501 U.S. at 440).

[22] *Id.* at 763 (quoting *Tackett*, 574 U.S. at 439).

9

We also note that our decision here is consistent with the outcome arrived at by our sister circuits in labor cases.[23]

Finally, we must explain how we can come to this conclusion in view of our holding in *Luden's* that an arbitration clause may survive the expiration of a CBA "as a term of a new implied-in-fact CBA."[24] As a panel, are we not bound by the precedential holding in *Luden's*? Clearly, however, when we consider the development of the law in *Tackett* and *Reese*, we must admit that our decision in *Luden's* to extend the duration of the arbitration provision beyond the expiration of the CBA, without there being any durational clause in the arbitrational provision, is a violation of "ordinary contract provisions."[25] Under the reasoning of *Tackett* and *Reese*, we are required to hold that the arbitration provisions here expired with the CBAs.

Although normally we would not overrule a prior precedent of our Court without an *en banc* hearing, we are permitted to do so when that prior precedent has been

---

[23] *See, e.g.*, *Nat'l Lab. Rels. Bd. v. Nexstar Board., Inc.*, 4 F.4th 801, 811 (9th Cir. 2021) (noting that "the agreement in the CBA to arbitrate expires with the CBA"); *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1119 (7th Cir. 1998) (noting that "an arbitration clause is not effective after a CBA expires, unless the parties agree to continue the clause"); *Des Moines Mailers Union, Teamsters Local No. 358 v. NLRB*, 381 F.3d 767, 770 (8th Cir. 2004) (applying general durational clause of the CBA).

[24] *Luden's*, 28 F.3d at 364.

[25] *Reese*, 138 S. Ct. at 765.

"undermined by the Supreme Court."[26]  Our review of *Tackett* and *Reese* convinces us that the holdings in those two cases undermine our opinion in *Luden's*.  For that reason, we hold that *Luden's* is overruled and that, as a matter of contract law, the arbitration provisions here, because they do not have their own durational clauses, expired with the CBAs on the CBAs' termination date.

For the above reasons, we will affirm the judgment of the District Court.

---

[26] *United States v. Jacobs*, 21 F.4th 106, 114 (3d Cir. 2021).

11